UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

LOUIS D. PAOLINO, JR.,

    Plaintiff,

v.              406CV025

DOUGLAS McCLAIN, JR.,

    Defendant.

## ORDER

### I. INTRODUCTION

In this fraud/civil RICO case, plaintiff Louis D. Paolino claims that defendant Douglas McClain, in his capacity as the President of Argyll Equities, LLC, loaned him money as a part of a scheme to defraud him of his 19.7% interest in Mace Security International, Inc. Doc. # 1. Paolino has brought several related suits in other courts around the country. Doc. # 22. McClain now moves to dismiss Paolino's complaint or, in the alternative, for a stay of this action while Paolino's related state court action is heard. Doc. ## 9, 21. Paolino opposes both motions. Doc. ## 16, 31.

### II. BACKGROUND[1]

Paolino is the CEO and Chairman of Mace Security International, Inc., the producer of the well-known Mace spray. Doc. # 1 ¶ 5. Prior to the events giving rise to this case, Paolino also owned 19.7% of Mace's shares, which are publicly traded on NASDAQ. *Id.*

In 4/04, Paolino took out a $4.1 million loan from an investment group called Argyll Equities, LLC ("Argyll"). *Id.* ¶ 11. Defendant Douglas McClain is the President of Argyll. *Id.* ¶ 2. Paolino learned of Argyll through a man named Jeffrey Spanier, who owns his own investment fund called AmeriFund Capital Finance, LLC ("AmeriFund"). *Id.* ¶ 7. Spanier represented to Paolino that he had previously done business with Argyll and that Argyll would lend to Paolino on beneficial terms. *Id.*

Relying on Spanier's assurances, Paolino executed a Loan Agreement with Argyll. *Id.* ¶ 11. In that Agreement, Paolino borrowed $4.1 million from Argyll. *Id.* In return, he promised to pay interest and pledged as collateral 1.19 million Mace shares. *Id.* During negotiations, Spanier orally promised that he would provide notice to Paolino whenever an interest payment was due on the loan. *Id.* ¶ 10. The loan agreement also specifically provided that, absent a default on the loan, Paolino would retain the ability to vote all of the shares. *Id.* ¶ 12.

Though Paolino borrowed only $4.1 million from Argyll, the value of his shares on the closing date was in excess of $6.8 million. *Id.* ¶ 16. Thus, shortly after the closing of the loan to Paolino -- and without giving notice to him or filing any disclosures with the SEC -- Argyll began selling off Paolino's stock for a profit in excess of $2 million. *Id.* ¶ 17.

Argyll sold off Paolino's shares even though Paolino was never actually in default on the loan. *Id.* ¶ 18. Argyll did give notice that a 7/15/04 interest payment was due; Paolino promptly sent a check to cover the amount due, and Argyll received and cashed it. *Id.* ¶¶ 18-19.

---

[1] At this motion-to-dismiss stage, the Court accepts as true the allegations in Paolino's complaint. *Next Century Comm. Corp. v. Ellis*, 318 F.3d 1023, 1025 (11th Cir. 2003) (citation omitted).

However, Paolino did not receive any other correspondence from Argyll until 11/2/04[2], when Argyll sent him a Notice of Default based on his failure to make his 10/15/04 interest payment. *Id.* ¶ 21. The Notice of Default also indicated that Argyll was terminating the loan and could thereafter seize and sell Paolino's stock for its own account. *Id.* ¶ 22.

Immediately upon receiving Argyll's notice of default, Paolino sent Argyll a letter stating that Argyll had not given him notice of the interest payment that was due. *Id.* ¶ 23. He attached a check for the overdue payment, and Argyll cashed the check. *Id.* Nevertheless, Argyll's counsel sent Paolino an e-mail offering to "defer" Argyll's exercise of its right to declare a default if Paolino would execute a modified Loan Agreement. *Id.* ¶ 25. He added in the e-mail that Argyll would "take no action" with respect to Paolino's Mace shares until at least 11/8/04. *Id.* The parties later agreed to extend that "standstill" agreement until at least 12/23/04. *Id.* ¶ 26. During that period, defendant McClain orally represented to Paolino that no action would be taken with respect to Paolino's shares. *Id.* ¶ 27.

Unable to reach an agreement, Paolino filed an action in state court against Argyll, seeking damages and a temporary restraining order to prevent Argyll from selling the stock. *Id.* ¶ 28. Argyll opposed the TRO even though it had already sold Paolino's stock. *Id.* Paolino then learned of a similar Argyll scheme in Hong Kong; in response, he dismissed his state court action and filed a claim against Argyll and its "co-conspirators" in the United States District Court for the Western District of Texas. *Id.* ¶ 29. However, that court dismissed the "co-conspirators" -- including McClain, the defendant here -- because it lacked personal jurisdiction over them. *Id.* ¶ 32.

The Texas federal court also dismissed Paolino's case against Argyll based on a forum selection clause in the parties' loan agreement requiring that all claims be brought in a Texas state court. Doc. # 16 at 13; *Louis D. Paolino, Jr. v. Argyll Equities, LLC*, Civil Action No. SA-05-CA-0342 doc. # 62 (W.D.Tex. 8/31/05).

Additionally, it remanded a related declaratory judgment action brought by Argyll Equities seeking a declaration that Argyll could sell the Mace stock. *Argyll Equities, LLC v. Paolino*, Civil Action No. SA-05-CA-0450 doc. # 62 (W.D.Tex. 8/31/05). Paolino's appeal of those decisions is currently pending. *Argyll Equities, LLC v. Paolino*, Court of Appeals Docket # 05-51314 (5th Cir. 10/14/05); *Paolino v. Argyll Equities, LLC*, Court of Appeals Docket # 05-51587 (5th Cir. 11/21/05).

Paolino then proceeded to file separate federal actions against each of the dismissed co-conspirators in their home states – including this action against McClain, a resident of Savannah, Georgia. *Id.* In those complaints, Paolino brings claims for unjust enrichment, civil conspiracy to commit fraud, fraud and fraudulent inducement, civil RICO, and conspiracy to violate civil RICO. *Id.* ¶¶ 33-61.[3]

---

[2] Paolino's complaint states this date as 11/22/04, but the Court believes, based on context, that this is a typo. Doc. # 1 ¶¶ 21-26.

[3] Paolino also filed nearly identical suits against the other alleged co-conspirators: *Paolino v. Miceli*, Civ. Action No. 06-CV-0252 (S.D.Cal.); *Paolino v. Hussain, Egan, Bendersky & Franczyk, LLC*, Civ. Action No. 06-CV-00611 (N.D.Ill.); and *Paolino v. AmeriFund Capital Finance, LLC et al.*, Civ. Action No. 06-CV-80119 (S.D.Fla.); *see also* doc. # 18 at 1 n. 1.

The California district court dismissed Paolino's action

Paolino filed identical claims, along with state law claims including breach of contract, as counterclaims against Argyll in Argyll's declaratory judgment action in a Texas state court. *See* doc. # 34 exh. A; *see also* doc. # 18 at 1 n. 1 (identifying Argyll's declaratory judgment action in Texas state court).

Defendant McClain now moves to dismiss Paolino's complaint, arguing that each of Paolino's claims is insufficient, either because the law does not provide for relief on the facts or because Paolino has not specified any actions performed by *McClain* himself. *See* doc. # 10. Alternatively, McClain moves to stay this action while Paolino's "parallel" state cause of action against Argyll proceeds. *See* doc. # 22.

### III. ANALYSIS

#### A. Motion to Stay

McClain moves to stay this action based on the abstention doctrine set out in *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800 (1976), which permits a federal district court to abstain from hearing a case in deference to a parallel state proceeding. Under that doctrine, the Court must first determine whether the instant case and the relevant state suit involve "substantially the same parties and substantially the same issues." *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004); *see also id.* at 1330 n. 21 (collecting other cases adopting this rule of "substantial similarity").

If that first prong is met, the Court must then weigh the following factors to determine if abstention is appropriate:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

*Id.* at 1331 (citation omitted).

Additionally, "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state proceeding under *Colorado River*...." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n. 20 (1983).

Finally, the factors must be considered flexibly. No one of them is necessarily determinative, and "the weight to be given to any one factor may vary greatly from case to case," but the abstention inquiry "must be heavily weighted in favor of exercising jurisdiction." *Ambrosia Coal*, 368 F.3d at 1331-32 (citations omitted).

#### B. Applying the *Colorado River* Factors

There are two relevant state causes of action here: Paolino's suit against Argyll and Argyll's declaratory judgment action against Paolino, both filed in Texas state courts. Doc. # 21 at 2. Paolino contends that his breach of contract action against Argyll has now been non-suited.

---

against Miceli (another principal of Argyll) because Paolino failed to state facts showing that Miceli was responsible for Paolino's damages. *See* doc. # 18 exh. 1. That court added, however, that it might have stayed the action if it had not reached the merits, noting that to allow the suit to proceed would create the possibility for inconsistent judgments or a double recovery for Paolino. *See id.* at 5 n. 5.

3

Doc. # 31 at 17. Thus, only Argyll's declaratory judgment action against Paolino -- along with Paolino's counterclaim -- is relevant. *Argyll Equities, LLC v. Paolino*, Cause No. 05-181 CCL (Kendall County Texas Court at Law); *see* doc. # 18 at 1 n. 1; doc. # 34 exh. A (Paolino's state court counterclaims).

Though Paolino strives to distinguish this case from the *Argyll* case, there is no doubt that the two involve "substantially the same parties and substantially the same issues" within the meaning of *Ambrosia Coal*. Paolino makes much of the fact that Argyll is the party in Texas while McClain is the party here, but that does not defeat a finding of substantial similarity: McClain is the President and one of the principals of Argyll, and their interests in the two suits are nearly identical. *See, e.g., Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992) (finding that abstention was appropriate because individual's estate had "nearly identical" interest in opposing suit as did corporation in which he had an interest); *Ambrosia Coal*, 368 F.3d at 1330 (noting that parties need not be identical for abstention to apply). Moreover, many of the counterclaims that Paolino alleges against Argyll in Texas are based on acts taken by McClain on Argyll's behalf -- the *identical* acts of which Paolino complains here. *Compare* doc. # 34 exh. A ¶¶ 5-32, 39-67 *with* doc. # 1 ¶¶ 33-61.

For that matter, Paolino's complaint in this case is a cut-and-paste of his counterclaims in the Texas case, though he has replaced allegations against Argyll with allegations against McClain. *Contrast, e.g.,* doc. # 34 exh. A ¶ 7 ("This case concerns Argyll's conspiracy to defraud Paolino ...") *with* doc. # 1 ¶ 7 ("This case concerns Defendant's conspiracy to defraud Paolino ..."). The key difference between the actions, as it turns out, is that here Paolino pursues only 5 claims, while in Texas he pursues those same 5 claims along with several state law claims, including a breach of contract claim governed by Texas law. *Contrast* doc. # 34 exh. A ¶¶ 33-96 *with* doc. # 1 ¶¶ 33-61. Thus, not only does the Texas case involve the exact same claims and the exact same facts, but it also addresses the facts more comprehensively by including Argyll's declaratory judgment action and Paolino's state law counterclaims, including a crucial one for breach of contract under Texas law.

In the second stage of the abstention analysis, this critical difference between the Texas case and the case at bar implicates several *Colorado River* factors. Factors 2 and 3 -- the inconvenience of the federal forum and the potential for piecemeal litigation -- weigh heavily in favor of abstention, since the Texas court can address all claims related to the events in one action, while hearing this action would only address a portion of the claims and would require McClain to defend the same claims arising out of the same facts in two different courts at the same time. *Ambrosia Coal*, 368 F.3d at 1331; *Colorado River*, 424 U.S. at 818-820.

Those same reasons apply to factor 6 – the adequacy of the state court to protect the parties' rights. Here, the Texas state court is in an excellent position to protect Paolino's rights, since it can determine at one time all of the claims arising from this set of facts. Alternatively, this Court can only reach a result on a portion of Paolino's claims; an outcome here prior to an outcome in Texas could lead to an inconsistent judgment later or could require Paolino to return to the Texas state court and litigate over the thorny issue of collateral estoppel.

Other *Ambrosia Coal* factors also point to abstention, for this suit was filed only *after* Argyll filed its declaratory judgment action in Texas. *Compare* doc. # 34 exh. A (Paolino's

state court counterclaim filed 10/3/05) *with* doc. # 1 (S.D.Ga. Complaint filed 2/2/06). The state court action was filed well before this action, and that primacy weighs in favor of abstention, especially since Paolino admits that he sought relief in the federal courts in part because of the slow progress in the state courts. Doc. # 16 at 6; *Ambrosia Coal*, 368 F.3d at 1331; *Moses H. Cone*, 460 U.S. at 17 n. 20.

The Court also finds it critical here that, while the named parties in the actions are different, the relief Paolino seeks is the same: he wants his stock (or at least the cost of replacing it) back. Thus, while Paolino is correct that a ruling on the Texas action would not necessarily moot this action, he fails to mention that that more comprehensive action is more likely to make him whole than this one.

Furthermore, it makes sense to allow the Texas courts to consider the loan contract under Texas law. The Texas suit is not only likely to obviate the need for Paolino to proceed in this action, but it could also clarify McClain's level of liability on the Argyll contract if this case *did* need to proceed. Finally, there has already been significantly more discovery in Texas than has occurred here -- and that is another factor in the analysis that points to abstention. Doc. # 21 ¶ 14; *Ambrosia Coal*, 368 F.3d at 1333.

To conclude, since several of the abstention factors point strongly toward abstention -- while *none* weighs against it -- this Court finds that abstention under the *Colorado River* doctrine is appropriate, notwithstanding the strongly-weighted preference for exercising jurisdiction. *Ambrosia Coal*, 368 F.3d at 1331-32. This nation's dual federal-state court system, it must be remembered, strives to promote comity and efficiency; a plaintiff should not be encouraged to pursue a federal suit just because he is unhappy with the speed at which his state suit is progressing. *See* doc. # 16 at 6; *Moses H. Cone*, 460 U.S. at 17. These considerations lead this Court to stay this action while the *Argyll* case proceeds in the Texas courts.[4]

## IV. CONCLUSION

Accordingly, defendant Douglas McClain, Jr.'s motion to stay (doc. # 21) is **GRANTED**. In light of that result, this case is **ADMINISTRATIVELY CLOSED**. For docketing purposes only, McClain's motion to dismiss (doc. # 9) is **DENIED** without prejudice to his right to re-file it should this case be reopened. Finally, either party may move to reopen this case upon a showing that the merits of Paolino's claims against McClain were not reached in his Texas state court case against Argyll.

This 17 day of July, 2006.

/s/ B. Avant Edenfield

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[4] The Court recognizes that Paolino is presently appealing the Western District of Texas's remand order based on the loan contract's forum selection clause. *See supra* at 2. If the Fifth Circuit grants that appeal and orders that the case be heard in federal court, that would be a basis for this Court to revisit its stay based on the *Colorado River* doctrine.